## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

EDGAR VILLAFUERTE GARCIA,

      Petitioner,

v.                            CASE NO: 8:08-CV-1318-T-30TBM

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____/

## ORDER

THIS CAUSE comes before the Court upon Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2254 (Dkt. #1), the Government's Response (Dkt. #10) filed in opposition thereto, and Petitioner's Reply (Dkt. #14).

### BACKGROUND

Petitioner was found guilty of drug trafficking, possession of drug paraphernalia, and driving with a suspended or revoked license (Dkt. #10 at 2). Petitioner appealed, arguing that the 10th Judicial Circuit Court erred in denying his motion for judgment of acquittal. After the Second District Court of Appeal affirmed, Petitioner filed a post-conviction motion in the circuit court, in which he argued that his counsel was ineffective on three separate grounds.

Ultimately, the circuit court denied Petitioner's motion, and the Second District affirmed.[1]

Petitioner timely filed the instant motion on July 4, 2008.

## DISCUSSION

Petitioner raises the following grounds in support of his motion:

**Ground One:**    Insufficient evidence to support trafficking due to improper commingling of substances tainting evidence.

**Ground Two:**    Ineffective assistance of counsel for failure to investigate and move to suppress based on invalid traffic stop.

**Ground Three:**    Ineffective assistance of counsel for failure to move for a Richardson hearing after being made aware of evidence tampering.

**Ground Four:**    Ineffective assistance of counsel for failure to utilize peremptory strikes at jury selection allowing a biased jury.

The Court concludes Petitioner is procedurally barred from asserting his "insufficient evidence" claim. Further, even if Petitioner were not procedurally barred, the Court would deny his "insufficient evidence" claim on the merits. Additionally, the Court denies Petitioner's ineffective assistance claims on the merits.

## I. INSUFFICIENT EVIDENCE

The first ground on which Petitioner bases his motion is his assertion that there was insufficient evidence at trial to support the "trafficking in methamphetamine" charge under

---

[1]The circuit court initially denied Petitioner's motion on all three grounds. On appeal, the Second District affirmed the circuit court's decision as to grounds one and two, but reversed as to ground three and remanded for further proceedings. On remand, the circuit court denied Petitioner's claim on ground three again. This time the Second District affirmed (Dkt. #10 at 3-4).

Florida Statute §893.135.[2]  Specifically, Petitioner argues that the State increased the weight of the evidence to support the charge by commingling the methamphetamine it seized.[3] Apparently, when Deputy William Strickland searched Petitioner's vehicle, he found a black leather camera bag with two block substances in plastic bags, and six individually packaged smaller bags (Rcd. # 27 at 165-68).   Deputy Strickland testified that he commingled the substances in another bag:

> Q.    Now, as to the yellowish substance that you found inside the camera bag and after you did the field test, what did you then do with those items?
>
> A.     They were heat-sealed, in heat-sealed plastic bags and put in evidence lockers to be sent to our property in evidence.
>
> Q.    Okay.  Did you remove them from the containers you found them in?
>
> A.    Yes, sir.  The substance was taken out of the bags that they were in and then it was put into one heat-sealed bag.
>
> Q.    Was that bag sealed by you?
>
> A.    Yes, sir.
>
> Q.    And was it tagged by you?
>
> A.    Yes, sir.
>
> Q.    And – what kind of tag that was?
>
> A.    It's marked similarly to this one with the initials, ID number and the date on the bottom and then it is given one of these tags stapled to the top corner, these chain of custody tags.
>
> Q.    Okay. All of the suspected substances were emptied into that bag; is that correct?
>
> A.    Yes, sir, they were.
>
> Q.    And what did you do with the bag after you sealed it and tagged it?
>
> A.    Put it in the evidence locker.

---

[2]Florida Statute §893.135(f)1. provides that "[a]ny person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 14 grams or more of amphetamine . . . or methamphetamine . . . commits a felony of the first degree, which felony shall be known as 'trafficking in methamphetamine' . . ."

[3]Florida Statute §893.135(f)1.b. provides that if the quantity of methamphetamine "[i]s 28 grams or more, but less than 200 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of 7 years, and the defendant shall be ordered to pay a fine of $100,000."

Q.    Are you the Polk County Sheriff's Office what they call a case agent in this particular case?

A.    Yes, sir.

Q.    And what does a case agent do?

A.    Just the primary deputy, investigating deputy.

Q.    Is it your responsibility in that capacity to manage the items of evidence that relate to the case?

A.    Yes, sir.

Q.    To your knowledge, were any of the items that were inside the black camera bag ever sent anywhere else for testing or analysis?

A.    Yes, sir, I believe the substance, the chunky substance was sent to FDLE, I believe it was sent there twice.

(Rcd. #27 at 176-77).  Consistent with Deputy Strickland's testimony, Anna Deakin, a crime lab analyst for the Florida Department of Law Enforcement (FDLE), testified that she received the substance twice for testing.

On December 16, 2002, Ms. Deakin was given a bag containing several chunks of a compressed powder and loose powder.  She weighed the substance and tested a portion.  She concluded that the substance contained methamphetamine.  She sealed the substance back in its original container and returned it to the evidence vault (Rcd. #27 at 108-13).  Then on January 30, 2003, she received the same bag from FDLE:

A.    I originally had received the sample and there were two large chunks, some smaller chunks and some loose powder.  I separated each of the larger chunks into their own samples.  So one large chunk was A.  The second was B, and the remaining smaller chunks and loose powder were C.

Q.    And why did you divide it up in that manner?

A.    Based on information that was given to me from Barbara Coleman, an assistant state attorney here in Polk County.  She notified me that according to the officer the samples that I had received were originally found in separate containers.  And they wanted me to attempt to re-analyze the substance.  Essentially uncommingle the sample back into its original form.  So the large chunks were easy to separate.  The

smaller chunks and the loose powder were a little more difficult to separate, so I just left them as one sample.

. . .

Q.    What was the conclusion of that analysis as to what the two chunks contained?

A.    They each contained methamphetamine.

. . .

Q.    So could you total the two weights [of the chunks] for us together and tell us what that is?

A.    That would be 52.5 grams total.

Q.    And when you tested the two chunks, in the testing process were they broken?

A.    I broke them.  They originally were intact.  I cut the chunks in half and sampled from the inside of the chunk.

Q.    Okay.  So what we have today then in each of those bags is actually two chunks of material in each bag; is that right?

A.    That's correct.

Q.    Is that because you broke them in the testing process?

A.    Yes.

Q.    And why were they broken in that manner to conduct the tests?

A.    I wanted to be able to prove that each of the chunks contained methamphetamine themselves and there was no possible – no possibility of any kind of contamination from the third sample, the loose powder.

Q.    So then you were looking at the interior portion of each of the two large chunks that you received; is that correct?

A.    That's correct.

Q.    Now, is it possible that the interior portion of those two chunks from which you extracted a sample could have been contaminated by the more powder-like material?

A.    Not on the inside of the chunk, no.

Q.    Would it be your conclusion that the two chunks would have tested positive for meth had they never been in – or near powdered methamphetamine?

A.    Yes, I believe they would have.

(Rcd. #27 at 115-18).  Based on Ms. Deakin's testing procedure, Petitioner and the State

dispute whether the evidence was sufficient to support the trafficking charge.

The State argues that the combined weight of the two chunks established that Petitioner was guilty of drug trafficking under Florida Statute §893.135(f)1.b.  The State relies on Ms. Deakin's testimony explaining that she "uncommingled the sample back into its original form" and that there was "no possibility of any kind of contamination."  Id.  On the other hand, Petitioner argues that the commingling contaminated the evidence, converting it from an inert non-contraband substance to an active contraband substance.  According to Petitioner, by the process of absorption and chemical osmosis, the conversion increased the weight of the contraband materials from less than 28 grams to over 28 grams.  On this basis, Petitioner argues that the evidence was insufficient to prove he was guilty beyond a reasonable doubt.

Petitioner presented this argument on direct appeal, contending that the circuit court erred in denying his motion for judgment of acquittal.  The Second District *per curiam* affirmed the circuit court's denial of Petitioner's motion.  After examining the argument Petitioner presented at trial and on direct appeal, this Court concludes that his "insufficient evidence" claim is procedurally barred.  However, even if his claim were not procedurally barred, this Court would deny his claim on the merits.

## A. Procedural Bar

If a claim is procedurally defaulted in state court, then a petitioner is procedurally barred from asserting the claim in federal court, unless the petitioner can satisfy the procedural default rule.  See Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas

corpus relief, who fails to raise his federal constitutional claim in state court, . . . is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."). Petitioner fails to satisfy the procedural default rule.

At the outset, the quantum of evidence required to withstand a motion for judgment of acquittal in Florida state courts is a matter of Florida law. It is well-settled that a violation of state law alone is not a basis for federal habeas relief. See Davis v. Jones, 506 F.3d 1325, 1332 (11th Cir. 2007) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.") (citation omitted). Petitioner must establish that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d) (emphasis added).

To bring his claim within the ambit of §2254(d), Petitioner relies on Brady v. Maryland, 373 U.S. 83 (1963), which declared that "the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment . . ." 373 U.S. at 87. In California v. Trombetta, 467 U.S. 479 (1984), the Supreme Court expounded upon the principle set forth in Brady, explaining that:

> [w]hatever duty the constitution imposes on the states to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

467 U.S. at 479-80 (footnote omitted) (citation omitted).  In addition to arguing that the circuit court erred under Florida law, Petitioner also argues that his right to due process under the 14th Amendment of the United States Constitution was infringed.

Even if Petitioner places a due process label on his claim, a denial of a motion for judgment of acquittal on the ground of insufficient evidence is ordinarily not cognizable in federal court.  See Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) (explaining that a petitioner cannot "transform a state-law issue into a federal one merely by asserting a violation of due process."); Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976) ("Although couched in terms of equal protection and due process . . . [t]his issue is not of federal constitutional proportions.").  Although the constitutional dimension of Petitioner's claim may appear to be cognizable, Petitioner must have presented his Brady argument to the state courts.  See Henderson v. Campbell, 353 F.3d 880, 891 (2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in state courts.") (citation omitted); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[P]risoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

To raise the constitutional issue, Petitioner merely needed to "indicate the federal law basis for his claim in a state-court petition or brief."  Baldwin v. Reese, 541 U.S. 27, 32 (2004); see id. (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief" to find the presence of a

federal claim).  As such, Petitioner argues that he did not solely rely on state law and asserted a due process claim in state court.  The Court concludes that Petitioner's argument is without merit.

At trial and on direct appeal, Petitioner not only failed to place a due process label on his claim, he never even referred to a federal statute, a federal case, or the United States Constitution (Rcd. #2 at 2-8 and #27 at 210-212).  Because Petitioner  only advanced state law arguments, Petitioner did not provide the state courts an "opportunity to resolve any [federal] constitutional issues."   O'Sullivan, 526 F.3d at 845.   Moreover, although Petitioner's state law arguments are similar to his Brady argument in the instant motion, "mere similarity of claims is insufficient to exhaust." Duncan v. Henry, 513 U.S. 364, 366 (1995); see also id. ("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him [due process] . . .").  Consequently, Petitioner procedurally defaulted the constitutional dimension of his claim in state court.

Under the procedural default rule, Petitioner has the burden to demonstrate either "cause and prejudice" or "actual innocence." Bousley v. U.S., 523 U.S. 614, 626-27 (1998). Under the "cause and prejudice" standard, Petitioner sets forth no basis for the cause prong. See Engle v. Isaac, 456 U.S. 107, 134 n. 43 (1982) ("Since we conclude that these respondents lacked cause for their default, we do not consider whether the also suffered actual prejudice.").  Additionally, under the "actual innocence" standard, Petitioner reasons that he is actually innocent of the trafficking offense because "but for the improper co-

mingling he could have only been charged and/or convicted of a simple possession offense with a maximum of five years penalty" (Dkt. #14 at 4).

To satisfy the "actually innocent" standard, Petitioner must establish that "'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, 523 U.S. at 623.  Morever, "innocence" in this context means "factual innocence, not mere legal insufficiency." Id.  According to Petitioner, the record reflects that Deputy Strickland improperly  tainted the evidence by commingling the methamphetamine. Petitioner fails to establish that he was innocent of trafficking "in light of all the evidence." Bousley, 523 U.S. at 623; see also Heath v. Jones, 863 F.2d 815, 820 (11th Cir. 1989) ("When the record reflects historical facts which support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant.").  Therefore, because Petitioner fails to satisfy the procedural default rule, he is procedurally barred from asserting his "insufficient evidence" claim.  However, even if Petitioner were not procedurally barred, this Court would deny his claim on the merits.

## B. Merits

At trial Petitioner and the State presented arguments regarding the issue of whether Ms. Deakin's testing procedure cured the commingling problem.  As the circuit court indicated when denying Petitioner's motion for judgment of acquittal, the sufficiency of the evidence regarding the commingling issue was a question for the jury, which was free to accept Ms. Deakin's testimony:

> MS. COLEMAN: As far as the commingling issue goes, I'm looking briefly at that case law that Mr. Pastorin supplied the state.  In Lyons v. State, which was the last case in his packet, number one says the rule on commingling requires that a sample must came [come] from each container, [of] powdered cocaine in order to have [the] amount in each container included, and [the] total alleged amount of that does not apply to the law for crack cocaine.
>
> Your Honor, in this case, we corrected the commingling issue.  We sent the methamphetamine back to the lab.  FDLE agent Anna Deakin testified that she weighed the rocks for chunks separately.  She cut them open, took a test out of the center of the rocks that were not contaminated by the other powder.
>
> There is not a commingling issue in this case.  If it was a large bag of powder and no chunks, then we would not be here in trial today.  The state has met its burden.
>
> THE COURT: Motion denied.
>
> MS. COLEMAN: Thank you.

(Rcd. #27 at 216).  Petitioner emphasizes that the State relied on cases where powder and crack cocaine were commingled, not methamphetamine.  Unlike crack cocaine, Petitioner asserts, methamphetamine is an absorption prone substance.  Evidently, this argument is based upon the state court's application of Florida case law.  This Court's task, however, is to determine whether the state court rendered a decision conflicting with federal law.  28 U.S.C. §2254(d).

This Court is to consider only whether the state court's decision was "contrary to, or involved an unreasonable application of" Brady or Trombetta.  Id.  Both of these cases clearly do not apply to the facts here because the State did not "suppress" or "destroy" evidence.  Brady, 373 U.S. at 87; Trombetta, 467 U.S. at 479-80.  Further, there was sufficient testimony at trial for which the jury could resolve this issue.  Therefore, because this Court concludes that Petitioners "insufficient evidence" claim lacks merit, this court denies his motion on ground one.

## II. INEFFECTIVE ASSISTANCE

The Sixth Amendment to the United States Constitution provides the right of the accused to have effective assistance of counsel for his defense.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  It is well-established that to prevail on an ineffective assistance claim, the accused must first show that his "counsel's performance was deficient" and then must show that the deficient performance prejudiced the outcome of his case.  Strickland v.Washington, 466 U.S. 668, 687 (1984).  The three grounds on which Petitioner bases his ineffective assistance claim are that counsel failed to (1) file a motion to suppress, (2) move for a Richardson hearing, and (3) use peremptory strikes.  On each ground, Petitioner has failed to establish that his counsel's performance was deficient.  Additionally, even if counsel's performance were deficient, Petitioner has failed to establish that he suffered sufficient prejudice.  Accordingly, Petitioner has failed to establish that the state court decisions were "contrary to, or involved an unreasonable application of" Strickland under 28 U.S.C. §2254(d).

### A. Failure to File a Motion to Suppress

Petitioner argues that his counsel failed to file a motion to suppress evidence seized based on an invalid traffic stop.  Moreover, Petitioner adds that his counsel unreasonably failed to investigate the scene where he was pulled over.  In addressing this argument, the circuit court noted that Deputy Strickland searched Petitioner's car after arresting him because he was driving without a valid license.  The court then made the following findings:

       1.     The defendant was stopped by Deputy Strickland on Saturday, 14 September 2002, at about 9:30pm after he stopped the defendant. According to the testimony, the Deputy observed the defendant driving his car in the center of the road for about 200 yards when there was no blockage which would prevent the defendant from driving on the right side of the road, a violation of Fla. Stat. 316.081. The deputy testified that the center of the road was clearly marked.

       2.     The defendant told the defense counsel prior to the trial that there was no marked center line on the road where he was stopped. The Court notes that the arrest report indicates the incident location as "2nd St East*Spires Rd. Wahneta" was [but] as the deposition indicates that the observed violation was on Ave A East. Defense counsel testified that he used the services of Investigator Elana Penzotti but had no record in his file of her findings. He concluded after the deposition of the deputy that he had no grounds for filing a Motion to suppress based on an illegal stop.

       3.     Defense counsel testified that his client never mentioned that he was unable to travel on the right side due to any obstruction or blockage in the roadway. At this hearing for the first time, the defendant says he drove in the center of the road, as observed by the deputy because of mailboxes and garbage cans blocking the right side. The Court finds this testimony of the defendant incredible.

(Rcd. #12 at 1-2). Essentially, the circuit court found that the defendant, under Strickland,

did not establish his counsel rendered deficient performance in failing to file a motion when

there were no valid grounds to do so.

In establishing an ineffective assistance of counsel claim under 28 U.S.C. §2254(d),

Petitioner must demonstrate that the state court's decision was "contrary to, or involved an

unreasonable application of" Strickland:

       A state-court decision is contrary to the Supreme Court's clearly established precedent (1) if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) if the state court

confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a different result than the Supreme Court precedent.

A state court decision involves an unreasonable application of Supreme Court precedent "if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to the context of a case."

Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2003) (citations omitted). Petitioner fails

to satisfy both the "contrary to" and "unreasonable application" standards under §2254(d).

Petitioner does not argue that the state court "applie[d] a rule that contradict[ed]" Strickland,

that the facts in this case are "materially indistinguishable" from facts in another case where

the Supreme Court arrived at a different result, or that the state court "unreasonably

extend[ed]" Strickland.  Id.  Alternatively, Petitioner attempts to re-litigate the sufficiency

of the evidence by continuing to argue that his counsel rendered deficient performance.

Specifically, Petitioner argues that his counsel's failure to investigate was unreasonable

because he did not obtain photographic proof to rebut the officer's claim that there was a

marked center-line in the street.  Petitioner reasons that this evidence would have revealed

the pre-textual nature of the traffic stop.[4]

---

[4]Petitioner also assets that the officer pulled him over because he was targeting individuals who fit a particular profile based on ethnic origin, and that counsel accepted the State's version of the facts because Petitioner speaks broken English.  Under the exhaustion doctrine, Petitioner cannot rely on these factual premises to support his claim because he did not assert them in state court (Rcd. #6 at 2-4).  See Jackson v. Caldwell, 452 F.2d 1068, 1069 (5th Cir. 1972) ("No Georgia state court has had the opportunity to consider the underlying facts upon which appellate bases his claim.  This Court has consistently held that the first opportunity to determine those facts should be afforded to the state courts.") (citations omitted).  Incidentally, when the officer was asked whether he had trouble conversing with Petitioner, the officer responded "No, sir, he speaks perfect English" (Rcd. #27 at 175-76).

However, the circuit court's findings indicate that Petitioner's counsel was not deficient in investigating the issue of whether the traffic stop was pre-textual.  Although Petitioner told his counsel that there was no marked center-line on the road, the court recognized that Petitioner's counsel concluded he had no grounds to file a motion to suppress after taking the officer's deposition and using the services of a private investigator.  Additionally, although Petitioner raised an issue of obstructions on the road, the court found that he was raising the issue for the first time at the post-conviction hearing, and that he never told counsel about road obstructions.  On this basis, the court concluded that Petitioner's counsel did not render deficient performance.  The trial court's findings are entitled to a "presumption of correctness."  See 28 U.S.C. §2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  Petitioner's mere rehashing of his trial court argument concerning the effectiveness of his counsel does not rebut the trial court's findings by "clear and convincing evidence."  Id.

Moreover, the court's conclusion is actually consistent with the Supreme Court precedent that Petitioner relies on.  See Kimmelman v. Morrison, 477 U.S. 365, 384 (1986) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . [and] a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.") (citation omitted).  Because Petitioner has not demonstrated that the state court decision was "contrary to, or involved an

Page 15 of  22

unreasonable application of" <u>Strickland</u>, the Court denies his ineffective assistance claim on ground two. <u>See</u> <u>Strickland</u>, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing in one."). However, even if Petitioner satisfied the deficiency prong under <u>Strickland</u>, he has not demonstrated sufficient prejudice.

Under the prejudice prong, Petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. Petitioner argues that his counsel's failure to investigate deprived Petitioner of a basis to file a motion to suppress. However, even if counsel filed a motion to suppress, the officer's testimony that Petitioner drove across a marked center-line militates against a finding that there is a "reasonable probability" the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694. <u>See</u> <u>also</u> <u>Hatcher v. State</u>, 834 So.2d 314, 317 (Fla. 5th DCA 2003) ("The commission of a traffic infraction gives the police the right to stop a vehicle and issue the offending driver a citation."). Indeed, Petitioner merely asserts that the proceeding would have been different without explanation. Empty assertions are inadequate to support an ineffective assistance of counsel claim. <u>See</u> <u>David v. U.S.</u>, 134 F.3d 470, 478 (1st Cir. 1998) ("[A] petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings."). Based on the foregoing reasons, the Court denies Petitioner's claim that his counsel was constitutionally ineffective in failing to file a motion to suppress.

## B. Failure to Move for a Richardson Hearing

The second ground on which Petitioner supports his ineffective assistance claim is his assertion that his counsel was ineffective in failing to move for a Richardson hearing.  The circuit court rejected this argument, explaining that Petitioner did not establish a basis for a Richardson hearing:

> The first reason the state lists why this Court should deny claim 2 is that the Defendant's reliance on Richardson v. State, 246 So. 2d 771 (Fla. 1971) is misplaced.  At issue in Richardson was a violation of the criminal discovery rules.  Since 1971, the State notes, the rules in this area have evolved, and now when a party alleges the nondisclosure of evidence, the laws of this state mandate a specific procedure.  Specifically, when apprised of such nondisclosure, the trial court must "make an adequate inquiry into the totality of the circumstances, including whether the violation was inadvertent or willful, whether it was trivial or substantial, and most important, whether it prejudiced [the party's] ability to prepare for trial."
>
> Here, on the other hand, the State points out that the record available to the Court is clear that no discovery violation occurred during the time leading to trial.  Conversely, the record indicates that trial counsel well in advance of trial knew the "co-mingling" issue about which the Defendant now complains.  Therefore, there was no "nondisclosure of evidence" here.  Where there is no discovery violation (or nondisclosure of evidence) there is no need for a Richardson hearing.
>
> Therefore, the State notes, the Defendant does not actually allege a discovery violation as contemplated by Richardson.  Instead, the Defendant alleges that the evidence in his case was co-mingled (which was discovered two months prior to trial).  He states that his desire for a Richardson hearing was to enable inquiry of State witnesses Anna Deakin, who was the FDLE controlled-substances examiner, and Detective Strickland about the weights of the substances taken from him.  The Defendant's desire was for defense counsel to file a Motion to Suppress on that basis.  However, this is not the factual situation Richardson addresses because this is not a "discovery violation."  This Court agrees with the State's argument and finds that the Defendant's claim can be denied on this basis.

(Rcd. #11 at 2) (citations omitted).  In the instant motion, Petitioner continues to assert that the pre-trial proceedings necessitated a <u>Richardson</u> hearing because "counsel was not made aware until during trial of the numerous test and [repackaging] done to the substance by the State's chemist–Anna Deakin" (Dkt. #1 at 6).  Further, Petitioner argues that he was deprived of the opportunity to obtain an expert who would have testified in his favor regarding the commingling issue.

Evidently, Petitioner appears to dispute the trial court's finding that "the record indicates that trial counsel well in advance of trial knew the 'co-mingling' issue about which the Defendant now complains" (Rcd. #11 at 2).  However, the trial court's finding is entitled to a "presumption of correctness."  28 U.S.C. §2254(e)(1).  Petitioner's mere assertion without additional support does not rebut the trial court's finding by "clear and convincing evidence."  <u>Id.</u>

Furthermore, to the extent that Petitioner did not become aware of particular evidence relevant to the commingling issue until Ms. Deakin testified at trial, the circuit court noted that counsel effectively attempted to remedy any violation through the proper legal procedures.  In addition to denying Petitioner's claim on the basis that there was no ground to move for a <u>Richardson</u> hearing, the circuit court also pointed out that counsel effectively assisted Petitioner by filing a motion for judgment of acquittal and by raising the issue on direct appeal:

> Secondly, however, the State argues that the Defendant's claim should be denied also because the Defendant raised the co-mingling issue in his appeal.  An issue which was, could have, or should have been raised on direct

appeal is not cognizable in a motion for postconviction relief under FLA. R. CRIM. P. 3.850. Although the State acknowledges that the Defendant can raise similar issues where a Defendant is making a facially sufficient allegation of ineffective assistance, here, the State argues, the Defendant does not make such a facially sufficient allegation given the record facts and because the Defendant raised the issue of co-mingling on appeal.

To effectively assist the Defendant with respect to admissibility of co-mingled drug evidence, the State argues, defense counsel was required to move for judgment of acquittal if the State failed to prove that the Defendant had the requisite amount of controlled substance to sustain a trafficking conviction. Here, trial counsel did raise the issue of co-mingling evidence in his *Motion for Judgment of Acquittal* during the trial, as, the State notes, <u>Calvo</u> requires. Not only did the Defendant raise this issue in appeal, the State notes, but the trial court's denial of the *Motion for Judgment of Acquittal* was the sole issue raised on direct appeal. The Second District Court of Appeal denied his appeal on February 20, 2004. This Court agrees with the State's assertion that: "Trial counsel cannot be deemed ineffective when the Record shows that he did what the law requires, and the Defendant cannot raise issues on collateral attack that have been decided in his direct appeal." Therefore, Claim 2 is denied on this basis as well.

(Rcd. #11 at 2-3). Therefore, because Petitioner has not demonstrated that a <u>Richardson</u> hearing was necessary, the Court denies Petitioner's claim that his counsel was constitutionally ineffective in failing to move for a <u>Richardson</u> hearing.

## C. Failure to Use Peremptory Strikes

The final ground on which Petitioner supports his ineffective assistance claim is his assertion that his counsel was ineffective for failing to use peremptory strikes during jury selection. The circuit court also rejected this argument:

[T]he trial court has since obtained the transcript of the jury selection and, after review, finds that claim 3 should be summarily denied as the record now conclusively establishes that claim 3 is without merit.

Specifically, in claim 3 Defendant asserts that his trial counsel was ineffective for failing to use preemptory challenges striking potential jurors John Williams, Charlie Shaw and Cecil Hayes.  And, as a result, "counsel did not use his best judgment in allowing jurors to preside over a case [where] bias and partiality may exist. . . . To allow these jurors to preside over the case was detrimental to the case. . . . There is [no] telling if said jurors contaminated the rest of the jurors."

In its February 16, 2007 Response the State argued, *inter alia*, "In this case, the veniremen, assuming that the Defendant accurately relates their statements, may have been ill-disposed toward illegal drugs.  That does not equate to actual bias against the Defendant. . . .  The Defendant has not shown that actually biased jurors served; therefore, all that he can claim is that in hindsight, perhaps Trial Counsel should have stricken those veniremen. Hindsight is precisely what the U.S. Supreme Court [in Strickland] warned postconviction courts not to employ in their view of collateral motions.  The Court agrees.

In support of his claim 3 Defendant asserts that potential juror John Williams advised, during *voir dire*, that he was opposed to legalizing illegal drugs because he had family members "that have a problem."  Defendant also states that potential juror Charlie Shaw advised that he was opposed to legalization of illegal drugs and had "family members all over with it and it is – it is tearing up . . . ."  Lastly, Defendant contends that Mr. Hayes "blames drugs for all the sadness in the world."  The Court finds the statements and opinions expressed by Mr. Williams, Mr. Shaw and Mr. Hayes neither showed bias toward the Defendant nor were sufficient to constitute "contaminating" or tainting the entire venire panel.

(Rcd. #22 at 2-3) (citations omitted) (footnotes omitted).  Because the circuit court concluded that there was no valid basis on which counsel should have used the peremptory strikes, the court denied Petitioner's ineffective assistance claim.

Under 28 U.S.C. §2254(d), Petitioner must establish that the state court's decision was "contrary to, or involved an unreasonable application of" Strickland.  Petitioner strives to demonstrate that the jury members were biased by analogizing to federal cases, only one

of which involves an ineffective assistance claim in the biased juror context:

> [p]etitioner's "claim of ineffective assistance of counsel is grounded in the claim that counsel failed to strike a biased juror.  To maintain a claim that a biased juror prejudiced him, however, [Petitioner] must show that the actual juror was biased against him."

> A juror's express doubt as to her own impartiality on *voir dire* does not necessarily entail a finding of actual bias.  The Supreme Court has upheld the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on *voir dire*.
>
> . . .

> Nevertheless, what distinguishes Petitioner's case . . .  is the conspicuous lack of response by both counsel and the trial judge, to Orman's clear declaration that she did not think she could be a fair juror.

Hughes v. U.S., 258 F.3d 453, 458 (6th Cir. 2001) (citations omitted).  The facts here are clearly distinguishable from Hughes because none of the jurors went so far as to declare that they "could not be a fair juror."  Id.  At best, the jurors here only indicated a "doubt" as to their impartiality, which "does not necessarily entail a finding of actual bias."  See id. (citing Patton v. Yount, 467 U.S. 1025, 1032 (1984)).  Accordingly,  the circuit court found that the jurors were not actually biased.

Petitioner also argues that the circuit court misapplied the Florida cases it relied on to conclude that the jurors were not biased.  However, a Florida court's interpretation of Florida law does not set forth a basis for federal habeas relief.  Davis, 506 F.3d at 1332.  As such, Petitioner has not demonstrated a basis on which to conclude that his counsel was ineffective for failing to use peremptory strikes.  Therefore, because Petitioner has not established that the state court's decision was "contrary to, or involved an unreasonable

application of" <u>Strickland</u>, the Court denies claim that his counsel was constitutionally ineffective in failing to use peremptory strikes.

It is therefore ORDERED AND ADJUDGED that:

1.     Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2254 (Dkt. #1) is DENIED.

2.     The Clerk is to enter judgment for Respondent, Florida Department of Corrections, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on December 10, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2008\08-cv-1318.deny 2254.wpd